**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

UNITED STATES OF AMERICA,
for the use of CHAPARRAL MATERIALS, INC.,

        Plaintiff,

        vs.                                  No.  10cv550 WJ/ACT

HDR ENTERPRISES, LLC,
CHRISTOPHER C. HERNANDEZ,
SHAWN SCHMIDT, ANGELICA ROMERO,
ORVILLE HARMISON and WESTFIELD
NATIONAL INSURANCE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT WESTFIELD'S
MOTION TO DISMISS
and
NOTICE TO PLAINTIFF OF POSSIBLE RULE 41 DISMISSAL FOR FAILURE TO
PROSECUTE AS TO UNSERVED DEFENDANTS**

        THIS MATTER comes before the Court upon a Motion to Dismiss filed by Defendant

Westfield National Insurance Company on December 9, 2010 by  **(Doc. 7)** and regarding the

Court's Order to Show Cause, filed November 8, 2010 **(Doc. 6)**.  Having considered the parties'

briefs and the applicable law, I find that Defendant's motion (Doc. 7) is not well-taken and will

be denied; and that Plaintiff is granted an extension of time in which to serve Defendants who

have not yet been served under the Court's Order to Show Cause (Doc. 6).  Plaintiff is also given

notice herein that the Court will consider dismissal of its claims under Rule 41(b) against all

Defendants not served when the extension of time expires.

**Background**

        This is a complaint for money due on a bond and for quantum meruit, brought under the

Miller Act, and therefore arises under federal question jurisdiction, 28 U.S.C. § 1331. The Miller

Act requires recipients of certain government construction projects to obtain a performance bond

and a payment bond. The Act allows suppliers of labor and materials to bring civil actions on the

payment bond for any amount unpaid after they complete their contractual obligations.  40

U.S.C. § 3133(b)(1).

Plaintiff is a New Mexico Corporation which entered into an agreement with Defendant

HDR Enterprises, LLC ("HDR") to supply materials for the Cochiti Campground Phase I project

in Sandoval County, New Mexico.  Defendants Christopher Hernandez, Shawn Schmidt and

Angelica Romero are principals of Defendant HDR.[1]  Westfield National Insurance Company

("Westfield"), as surety for the project, posted a payment bond for the protection of unpaid

subcontractors and suppliers in connection with the project.

According to the complaint, Defendants are indebted to Plaintiff for goods in the amount

of $13,348.61, but Defendants have failed to pay, and refuse to pay, Plaintiff the amount due.

### Discussion

This case is off to a very shaky start.  Plaintiff filed the complaint on June 4, 2010. On

November 8, 2010, the Magistrate Judge in this case issued an Order to Show Cause requiring

Plaintiff to "show cause by formal response . . . why this litigation should not be dismissed

without prejudice for failure to prosecute."  Doc. 6.  The Magistrate Judge noted that summons

were issued as to Defendants HDR, Harmison, Hernandez, Romero, Schmidt and Westfield on

June 7, 2010, and that affidavits of service were filed on July 22, 2010 as to HDR Enterprises,

LLC, Christopher C. Hernandez and Angelica Romero. Plaintiff's counsel failed to file a timely

---

[1]  The complaint identifies Defendant Harmison as a resident of Bernalillo County, but
does not further explain Harmison's role in this lawsuit.

response to the Court's Order to Show Cause, claiming that she never received the Court's Order to Show Cause (Doc. 14).  Counsel was given a ten-day extension in which to respond.  Plaintiff responded to the Order to Show Cause on the last day of the extension (Doc. 12).

On November 16, 2010 – more than 160 days after the complaint was filed – service was accepted on behalf of Westfield by the New Mexico Superintendent of Insurance, pursuant to NMSA 1978 § 59A-5-32.  Defendants Harmison and Schmidt still have not been served.

In this motion, Westfield seeks to dismiss claims against it pursuant to Rule 12(b)(5) and Rule 4(m) of the Federal Rules of Civil Procedure.

## I.     Legal Standard

Service of process may be insufficient under Rule 12(b)(5) of the Federal Rules of Civil Procedure if delivery of the summons and complaint is either never accomplished or not accomplished within 120 days after the lawsuit is filed. *See Rzayeva v. U.S.*, 492 F.Supp.2d 60, 74 (D.Conn.,2007).  Also, Fed. R. Civ. P. 4(m) provides that if a defendant is not served within 120 days after the complaint is filed, the Court, on motion, must dismiss the action without prejudice against the defendant. In order to avoid dismissal, the plaintiff must show good cause for the failure to serve the defendant within 120 days of filing the complaint. Fed. R. Civ. P. 4(m).

The preliminary inquiry to be made under Rule 4(m), which sets out time limits for service, is "whether the plaintiff has shown good cause for the failure to timely effect service." *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir.1995) (quoted in *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1111 (10th Cir. 2008)).  Under the express language of Rule 4(m), a court "must extend the time for service for an appropriate period" upon a showing of good cause.  However, if the plaintiff fails to show good cause, the district court must still

consider whether a permissive extension of time may be warranted." *Espinoza*, 52 F.3d at 841.

## II.   Analysis

Plaintiff explains the delay in service on Westfield as an administrative error.  In preparing the Summons and Complaint for service on the five Defendants in June 2010, counsel's secretary mistakenly attached the documents which were supposed to be served on Westfield to the documents which were to be served on Defendant Schmidt.  Doc. 12, Ex. B; Doc. 11, Ex. B.[2]  The mistake was not discovered until October, four months later, when Plaintiff's counsel asked the secretary for a status update on services in the lawsuit.  The secretary also admits that counsel had asked for a status update the previous month, but that she failed to provide one.  Thus, the error could have been discovered in September had the secretary investigated the status of the services when first asked.

Good cause requires at least a showing of good faith and a reasonable basis, beyond the plaintiff's control, for failing to comply with the time specified for service under the federal rules.  *See Lepone-Dempsey v. Carroll County Com'rs*  476 F.3d 1277, 1281 (11th Cir. 2007) (good cause exists "only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.").  In this case, the reason for delay in service was certainly not because of an outside factor; it was because of sheer inadvertence or negligence on the part of counsel's secretary.  Thus, the Court is not required to grant an extension of time for service, or in this case, consider service as to Defendant Westfield to be timely.

---

[2]  The same reason for the delay, with supporting Affidavit, is given in both the response to the Court's Order to Show Cause (Doc. 12) and in the response to the instant motion (Doc. 11).

However, even where "good cause" is not shown, it is up to the Court's discretion whether to dismiss or permit a further extension.  *Lepone-Dempsey*, 476 F.3d at 1282. In *Pioneer Inv. Services Co v. Brunswick Assoc. Ltd. Partnership*, the United States Supreme Court recognized that "excusable neglect" is a somewhat elastic concept. 507 U.S. 380 (1993) (bankruptcy context). Under that concept, a court is "permitted, where appropriate, to accept late filing caused by inadvertence, mistakes, or carelessness" even when an adequate excuse is not tendered.  *Id.* at 388.  In considering whether to grant an extension under an "excusable neglect" concept, the Court considers four factors: prejudice which might inure to the opposing party or the Court, the length of delay involved, the reason advanced for the delay, and whether the dilatory party appears to have acted in good faith.  *See also United States v. Torres*, 372 F.3d 1159, 1160, 2004 WL 1345104, *3 (10th Cir.2004) (applying *Pioneer Investment Services* in Rule 4(b) context).

The Court finds that a consideration of the above factors weighs in favor of Plaintiff. The delay in service amounts to about one and a half months, which is not an unusually long delay, and does not appear to prejudicial to Defendant.  Plaintiff claims they may be faced with a statute of limitations bar if their claims against Westfield are dismissed.  However, this does not factor strongly into the Court's analysis, since Westfield contends that under the Miller Act, the statute of limitations expired two months before Westfield was served.  Thus, denying Westfield's instant motion would not resolve any underlying limitations defect in Plaintiff's claims against Westfield, and those issues are not before the Court at this point.   There does there appear to be any bad faith on the part of Plaintiff's counsel, or her secretary, and Westfield was promptly served when the error was.

Defendant argues that the excusable neglect standard can never be met by a showing of

5

inability or refusal to read and comprehend the plain language of the federal rules. This is true, even under the equitable balancing test adopted by the Supreme Court in *Pioneer Investment Services*. *See U.S. v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004). However, that is not presented as the reason for Plaintiff's delay in serving Westfield, and thus the equitable, multi-factor approach set out in *Pioneer Investment Services* is still appropriate. Therefore, Defendant Westfield's motion to dismiss is denied.

### III.    Order to Show Cause - Possible Dismissal Under Rule 41(b)

The Court notes that an Order to Show Cause is pending before the Court. Doc. 6. Since the Court issued that Order on November 8, 2010, there has been no movement on Plaintiff's part: Defendants Harmison and Schmidt are still not served.

The Court is contemplating dismissal of Plaintiff's claims against unserved Defendants for failure to prosecute under Fed.R.Civ.P. 41(b). *See Slack v. McDaniel*, 529 U.S. 473 (2000) (court may grant motion for involuntary dismissal or dismiss an action sua sponte); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962) (the inherent power of the Court to dismiss sua sponte for want of prosecution is well established).

Plaintiff states that it has been making diligent efforts to locate these Defendants, who appear to be attempting to evade service. Plaintiff also claims that Defendants Hernandez and Romero "refuse to provide any information as to the whereabouts of Harmison and Schmidt." Doc. 12. This representation indicates that the delay in serving Harmison and Schmidt is not completely within Plaintiff's control. The Court accepts this for now as a showing of good cause sufficient to grant an extension of time for service. *Espinoza*, 52 F.3d at 840-41 (good cause means a valid reason for delay, such as the defendant's evading service).

However, the Court notes that Plaintiff has in effect already received a month's extension

for service of these Defendants, by virtue of the fact that the Order to Show Cause was filed on December 23, 2010. Rule 4(m) requires only that the Court extend the time for service "for an appropriate period" and does not require continuous extensions until such time as Plaintiff locates and serves these Defendants. Therefore, the Court will afford Plaintiff one more extension of time within which to serve all Defendants who have not yet been served in this case, the deadline for which will be: **Monday, March 14, 2011**. After that point, a request for additional time will be subjected to extreme scrutiny by the Court, and will most likely be denied. At the very least, Plaintiff will be expected to do more than simply state that they have been diligent in trying to locate these Defendants, and will be required to document and describe in detail every attempt made to locate and serve these Defendants.[3]

### Conclusion

In sum, the Court finds and concludes that Defendant Westfield's motion to dismiss shall be DENIED. The Court has considered the factors relevant to extending the time period for service and in its discretion finds that Plaintiff has shown excusable neglect for the delay in service, and therefore will not dismiss Plaintiff's claims against Westfield based on the delay in service.

The Court also finds and concludes that Plaintiff is allowed one more extension of time within which to serve all Defendants who have not yet been served in this case, the deadline for

---

[3] For some reason, in the response to the Order to Show Cause, Plaintiff requests as an alternative relief to an extension of time, that the Court allow "substitute service" pursuant to Fed.R.Civ. P. 4(e)(1). There is no suggestion in Rule 4(e)(1) that the Court must "allow" such service. Rather, Rule 4 simply provides options for service – which includes service following state law under subsection (e)(1). Thus, during the time extended for service, the Court expects Plaintiff to avail itself of the applicable rules for service and not wait for the Court's advice on which one to use.

which will be: **Monday, March 14, 2011**.  The Court will be considering dismissal of Plaintiff's claims against all Defendants not served by that time.

      **THEREFORE,**

      **IT IS ORDERED** that Defendant Westfield's Motion to Dismiss (**Doc. 7**) is hereby DENIED for reasons described in this Memorandum Opinion and Order;

      **IT IS FURTHER ORDERED** that Plaintiff is granted another extension of time under the Court's Order to Show Cause (**Doc. 6**), the deadline for which is now **Monday, March 14, 2011**; Plaintiff is advised that the Court will dismiss Plaintiff's claims against all Defendants not served by that time, pursuant to Fed.R.Civ.P. 41(b).

_____
UNITED STATES DISTRICT JUDGE